# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **DENIS RIVERA,** ) | |
| ) | |
| Plaintiff, ) | Case No. 7:14CV00573 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **SGT. J. B. DICKENSON, ET AL.,** ) | By: James P. Jones |
| ) | United States District Judge |
| Defendants. ) | |

*Denis Rivera, Pro Se Plaintiff; John Michael Parsons, Assistant Attorney General, Office of the Attorney General of Virginia, Richmond, Virginia, for Defendants Dickenson, Patrick, Clarke, Hinkle, and Mathena; Rosalie Pemberton Fessier, Timberlake, Smith, Thomas & Moses, P.C., Staunton, Virginia, for Defendant Scott.*

Denis Rivera, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983. Liberally construed, Rivera's Amended Complaint alleges the following as violations of his constitutional rights, actionable under § 1983: (1) Correctional Officers Dickenson and Patrick at Red Onion State Prison used excessive force against Rivera on December 28, 2012; (2) Nurse Scott acted with deliberate indifference to Rivera's serious medical needs related to that incident; (3) Warden Mathena and Virginia Department of Corrections ("VDOC") Director Harold Clarke failed to provide their subordinates with training in the proper use of force and provision of medical care; and (4) Warden Mathena and Regional Administrator George Hinkle upheld the alleged violators' actions during

the grievance proceedings. After review of the record, I conclude that summary judgment must be granted as to defendants Clarke, Hinkle, Mathena and Scott, but denied as to Rivera's claims of excessive force by defendants Dickenson and Patrick. Because none of the parties have invoked the right to a jury trial, I will refer the matter to the magistrate judge to conduct further proceedings.

## I. Excessive Force.

"[O]nly the unnecessary and wanton infliction of pain" violates the Eighth Amendment prohibition against cruel and unusual punishment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (internal quotation marks and citations omitted). The court conducts an objective inquiry — whether "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation," and a subjective inquiry — whether a specific prison official "act[ed] with a sufficiently culpable state of mind." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (internal quotation marks and citation omitted).

The objective component of an excessive force claim focuses on "the nature of the force," which must be "nontrivial," *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010), and can be met by "the pain itself," even if the prisoner has no "enduring injury." *Williams v. Benjamin*, 77 F.3d 756, 762 (4th Cir. 1996) (internal quotation marks and citations omitted). The subjective component focuses on "whether force was applied in a good-faith effort to maintain or restore discipline, or

maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Factors the court should consider include (1) the need for application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury, (4) the threat reasonably perceived by the officers, and (5) any efforts made to temper the severity of a forceful response. *Whitley*, 475 U.S. at 321.

The type and extent of the injury the inmate suffered are relevant to the objective and subjective facets of the analysis in determining "whether the use of force could plausibly have been thought necessary in a particular situation" and as "some indication of the amount of force applied." *Wilkins*, 559 U.S.at 37 (internal quotation marks and citations omitted). However, "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency [and the Eighth Amendment] always are violated." *Hudson*, 503 U.S. at 9.

Under these principles, I cannot find that correctional officers Dickenson and Patrick are entitled to summary judgment.[1] Taking Rivera's allegations as

---

[1] A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004); *see also Gray v. Spillman*, 925 F.2d 90, 95 (4th Cir. 1991) (stating that at this stage of the proceedings, "[i]t is not [the court's] job to weigh the evidence, to count how many affidavits favor the plaintiff and how many oppose him, or to disregard stories that seem hard to believe").

true, after the officers escorted him from the shower back to his cell on December 28, 2012, he was kneeling on the floor in handcuffs and shackles, per policy, holding only his towel and washcloth in his hands. Yet, without any disruptive behavior or other provocation from Rivera, the officers struck him in the back of the head, slammed him to the floor, and choked, punched, kicked, kneed, and elbowed him in the head, face and ribs. As a result, Rivera allegedly suffered a concussion, multiple facial abrasions and bruises, long-term cheek and jaw pain, memory lapses, insomnia, nightmares, vision problems, and episodes of twitching near his eye.

The officers' affidavits and evidence tell a different story. They state that as they escorted Rivera back to his cell, they saw that he was carrying a large plastic bag. They contend that Rivera refused to comply with multiple orders to relinquish the bag, before and after he knelt in his cell, and that he then grabbed Dickenson's left wrist and tried to stand up.[2] The officers state that they used only as much force as needed to place Rivera on the floor and hold him there until Sgt. Collins arrived. They also assert that Rivera's de minimis injuries from the incident reflect that any force used was also de minimis and, therefore, not unconstitutional.

---

[2] Rivera was later found guilty on a disciplinary charge for grabbing Dickenson's arm.

While the officers may ultimately convince the court that their account is more credible and that they did not use excessive force under such circumstances, I cannot so find at this stage of the proceedings. I find genuine issues of material fact in dispute as to Rivera's behavior, the officers' observations, the degree of threat the officers reasonably could have perceived from the circumstances, the need for force, the relationship between the need for force and the amount of force applied, and the extent of Rivera's injuries from the incident.[3] The finder of fact could resolve these disputes so as to return a verdict in Rivera's favor on his claim of excessive force.[4] Accordingly, I cannot grant summary judgment for Dickenson and Patrick on this claim.

---

[3] Rivera states that he suffered more than one abrasion to his face, some of which left scars, and painful bruises on his body that appeared as dark spots after the alleged assault. For weeks after the incident when he tried to chew his food, he "felt extreme pain around [his] cheek/chin area and all around [his] head," suffered loss of appetite, and experienced "problems memorizing what [he] had just read." (Pl.'s Counter - Aff. 8-9, ECF No. 63.) He complains that he suffered a concussion and states that he has sought help with "ongoing insomnia [and] nightmares." (*Id.* 9, 11.) The optometrist prescribed glasses to correct blurry vision in Rivera's right eye, prescribed medication, and approved tinted glasses, allegedly related to periodic episodes of twitching in the right eye area.

[4] Based on these material factual disputes, I also find no merit to these defendants' assertions that they are entitled to summary judgment on the ground of qualified immunity on this claim. *See Buonocore v. Harris*, 65 F.3d 347, 359 (4th Cir. 1995) (finding that when resolution of qualified immunity question and plaintiff's claim itself depends upon determining what happened, summary judgment on qualified immunity grounds is not proper).

II. Liability of Supervisory Defendants.

In a § 1983 case, a supervisory official cannot be held vicariously liable under the doctrine of respondeat superior for constitutional violations committed by his subordinates. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). Rivera may establish supervisory liability only if he states facts showing personal fault on the part of each defendant, (a) based on the defendant's personal conduct, or (b) based another's conduct in execution of the defendant's policies or customs or with the defendant's tacit authorization. *See Fisher v. Wash. Metro. Area Transit Auth.*, 690 F.2d 1133, 1142-43 (4th Cir. 1982).

In the Amended Complaint, Rivera alleges, generally, that Director Clarke and Warden Mathena should be liable for failing "to implement and/or enforce proper provisions and/or employee training [regarding] the use of force by officers and/or the treatment (med.) provided to prisoners." (Am. Compl. 3, ECF No. 25-1.) He also alleges that he filed grievances about the excessive force used against him by Dickenson and Patrick and the inadequate medical assessment by Nurse Scott, but Mathena and Hinkle deemed these grievances to be unfounded.

In response to these accusations, Clarke states that, in his role as state-wide director, he oversees the overall operations of the VDOC, but does not have any personal involvement in supervising daily activities at individual correctional facilities. Mathena states that when he was the prison warden from October 2011

to January 2015, he required security staff to complete annual in-service training, which included instruction on the use of force. Records indicate that Patrick has completed such training annually since 2009, and that Dickenson has completed such training annually since 2010. Rivera's conclusory allegation of an unspecified failure to train officers in use of force techniques is not sufficient to preclude summary judgment in the face of the defendants' specific evidence to the contrary.

In Rivera's response to the motions for summary judgment, he submits statements from other inmates about officers' past use of force against them. Apparently, Rivera is attempting thereby to support a claim that Mathena and Clarke knew from these past force incidents of a risk that his officers might use unconstitutional force against Rivera, but failed to take corrective action. This claim also fails.

"A supervisor may be held liable under a tacit authorization theory [or failure-to-train theory] if that supervisor fails to take action in response to a known pattern of comparable conduct occurring *before* the incident at issue took place." *Danser v. Stansberry*, 772 F.3d 340, 350 (4th Cir. 2014) (emphasis added). A claim under this theory requires evidence that: (1) the defendant knew his subordinates had previously engaged in a widespread pattern of conduct that posed a pervasive and unreasonable risk of constitutional injury to people like plaintiff,

(2) the defendant's response to this knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the defendant's supervisory inaction and plaintiff's alleged constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Rivera's evidence in response to defendants' motion concerns mostly events in 2013, 2014, and 2015, involving other inmates who have characterized officers' actions against them as excessive force. (*See, e.g.,* Pl.'s Counter - Aff. Ex. L, ECF No. 63-2 at 98-103; Mot. Suppl., ECF No. 68.) Clearly, none of the defendants could have known of these isolated occurrences *before* the incident at issue in this lawsuit, which occurred in December 2012. Moreover, the events Rivera presents do not suggest any widespread pattern at Red Onion State Prison of officers using excessive force while placing an inmate back in his cell after a shower, as Rivera's lawsuit alleges. Thus, I find no genuine issue of fact here on which Rivera could show that Mathena and Clarke were on notice of a "pervasive and unreasonable risk" that Dickenson and Patrick would violate Rivera's rights as they allegedly did. *Shaw*, 13 F.3d at 799. Furthermore, Rivera offers no evidence that defendant Scott, a registered nurse, responded as he did to Rivera's medical complaints, based on any lack of job-appropriate training. I must, therefore, grant summary judgment for Mathena and Clarke.

For different reasons, I must also grant summary judgment for Mathena, Clarke, and Hinkle for any involvement in addressing Rivera's grievances about the 2012 force incident. First, because inmates have no constitutional right to participate in grievance procedures, officials' responses to grievances do not implicate any constitutionally protected right and are not actionable under § 1983. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Brown v. Va. Dep't Corr.*, No. 6:07-CV-00033, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009). Second, Rivera has no constitutional right to have a particular incident investigated or to have officers disciplined. *See, e.g., Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (finding individual has no constitutional right regarding criminal prosecution or non-prosecution of another person); *Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981) (finding that inmates had no constitutional claim based on magistrate's refusal to issue requested criminal warrant charging guards with assault). In short, the defendants are entitled to judgment as a matter of law regarding Rivera's complaints about their grievance responses.

### III. Deliberate Indifference to Medical Needs.

Rivera directs this claim solely at Nurse Scott and alleges the following relevant facts. After Dickenson and Patrick placed Rivera on the floor of his cell on December 28, 2012, Sgt. Collins called for a nurse to examine Rivera. Nurse Scott reported to the scene. Standing about two or three feet in front of Rivera,

-9-

Case 7:14-cv-00573-JPJ-PMS   Document 69   Filed 09/21/15   Page 9 of 17   Pageid#: 1023

who was in shackles and handcuffed to the back, Scott visually assessed the inmate's condition. Rivera told Scott about pain he was experiencing in his back, waist, hip, and knees, as well as his face, eye, neck and head. He asked Scott to lift his T-shirt to assess his bruises, but Scott did not do so, saying, "You don't have nothing." (Pl.'s Counter - Aff. 3, ECF No. 63.) After Rivera told Scott that the sergeant had filmed his injuries, Scott said "I only see cuts on your face." (*Id.*) He refused Rivera's request to have the cuts cleaned with alcohol pads.

Scott stated that Rivera had a knot on the back of his head. When Rivera asked for an ice bag for his head, however, Scott said, "No, you in Seg." (*Id.* 4.) Rivera told Scott that his neck hurt from being choked and he had abrasions on his knee and severe pain in his eye. According to Rivera, Scott did not check these areas, take his vital signs, assess him for symptoms of concussion, broken bones, or nerve damage, advise him how to care for his injuries or tell officers what items Rivera would need to do so, or refer him to the doctor and eye doctor, as Rivera requested.[5]

---

[5] Scott's nursing notes for his visual examination of Rivera on December 28, 2012, mostly track Rivera's allegations. Scott noted that Rivera complained about his head, his eye, and his wrist; he was alert and oriented to person, place, and time; his breathing was "even and unlabored"; he had a "small knot approx. 2 cm in diameter" to the left side of the back of his head, with "no redness noted to area"; he had a "[s]mall abrasion 1 cm in diameter noted to [the] edge of [his right] eyebrow," with no bleeding, redness, or swelling around it; and he had a "[s]mall abrasion hardly visible at [his right] wrist where the handcuffs touch." (Scott's Mem. Supp. Mot. Summ. J. Ex. A 12-13, ECF No. 23-1.) Scott noted no other complaints from Rivera. According to Scott's notes, he instructed Rivera to use a cool compress on the back of his head and to clean the

After the incident, officers removed Rivera's property from his cell, leaving him without soap to wash his injuries. Over the next two days, he filed emergency grievances and talked to officers, asking for pain medication and assessment by a doctor and an eye doctor. He was advised to place sick call requests, as his situation was not an emergency. After the second emergency grievance, a nurse placed Rivera on the sick call list.

On January 1, 2013, Nurse Stump assessed Rivera through his cell door window at sick call. She noted a small bruise on his right hip, a bruise on his right eye and cheekbone area, and "skin pilling on cheek bone area [and] scab[b]ing on both wrist[s]." (Pl.'s Counter - Aff. 7, ECF No. 63.) He also complained of headaches, blurred vision, flashes of light, nausea, memory loss, trouble concentrating, and dark spots on his skin. The nursing staff consulted with the institutional physician, who ordered additional medications for Rivera. Staff then placed Rivera on the list to see the doctor. On January 6 and 9, 2013, Rivera filed emergency grievances to the medical staff. In response, staff contacted the doctor, who ordered Tylenol. Scott was not involved in any of these medical staff interactions with Rivera after December 28, 2012.

---

abrasions with soap and water; he told Rivera to stretch and move his wrist and hand through a full range of motion, and when Rivera did so, Scott did not observe any grimace or other sign that the movement caused him pain; and he instructed Rivera to place a sick call request for any symptoms that persisted.

-11-

According to Rivera's medical records, he saw the prison doctor on January 10, 2013. The doctor noted that Rivera was complaining of blurred vision and head pain while chewing, but found that Rivera was afebrile and in no apparent distress, with vital signs stable. He also noted on Rivera's report that he had "vomited last 2 days" and was "having memory problems." (Scott's Mem. Supp. Mot. Summ. J. Ex. A 10, ECF No. 23-1.) The doctor found a questionable "minor concussion" based upon the history provided by the patient but not based upon the clinical exam. (*Id.*) The doctor referred Rivera to an optometrist for his vision complaints.

Rivera saw the prison doctor again on January 39 and March 4, 2013, voicing similar complaints. The doctor did not diagnose a concussion or any other serious injury after these examinations.

Deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment and is actionable under Section 1983. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (*overruled on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994)).

An official is deliberately indifferent only if he was personally aware of facts indicating a excessive risk to an inmate's health or safety, actually recognized the existence of such risk, and disregarded or responded unreasonably to that risk. *Farmer*, 511 U.S. at 837. A defendant's "knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that a risk was obvious." *Id.* at 842 (citation omitted).

"[A]n inadvertent failure to provide adequate medical care" does not amount to the deliberate indifference required to prove a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105-06. Similarly, the "deliberate indifference standard is not satisfied by . . . mere disagreement concerning '[q]uestions of medical judgment.'" *Germain v. Shearin*, 531 F. App'x 392, 395 (4th Cir. 2013).

Even taking the evidence in the light most favorable to Rivera, I cannot find that he has stated facts on which he could persuade the finder of fact that Nurse Scott acted with deliberate indifference to any serious medical needs. Clearly, Rivera disagrees with Scott's diagnosis and treatment decisions that day. Rivera believes Scott should have taken his vital signs and checked for nerve damage, provided him with an ice pack, and referred him to a doctor and an eye doctor. In addition, Rivera denies Scott's claim that he advised Rivera to care for his injuries
-13-

by moving his wrist to check his range of motion and instructing him to use a compress and wash his cuts with soap. I cannot find these disputes to be material, however. It is undisputed that Scott made a visual evaluation of Rivera's condition on December 28, 2012, and in his medical judgment, noted no condition or symptom, at that time, which necessitated immediate medical treatment by medical staff. Rivera's beliefs to the contrary are essentially accusations that Scott's examination and treatment decisions were negligent, and negligent actions alone are not actionable under § 1983.[6] *See Estelle*, 429 U.S. at 106 (finding that alleged "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner").

Moreover, Rivera has not presented any evidence on which he could persuade the fact finder that he exhibited any serious medical need for which immediate treatment was medically necessary when Scott examined him. Rivera admits that he had washed off the blood from his cuts and abrasions by the time Scott arrived, and Scott saw no active bleeding.[7] Rivera's medical records do not

---

[6] Rivera's complaints that Scott merely failed to follow protocol or normal nursing examination procedures arise, if at all, under state regulatory or medical malpractice law. Section 1983 was intended to protect only federal rights guaranteed by federal law. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). Rivera's state law claims are thus not independently actionable under § 1983, and I decline to exercise supplemental jurisdiction over them in this action. *See* 28 U.S.C. § 1367(c). I will dismiss all such claims without prejudice.

[7] Rivera has filed what he titles a "Motion for Spoliation," complaining that prison officials failed to preserve, or destroyed, surveillance video camera footage of the

-14-

Case 7:14-cv-00573-JPJ-PMS   Document 69   Filed 09/21/15   Page 14 of 17   Pageid#: 1028

reflect that any doctor ever definitively diagnosed him as having suffered a concussion on December 28, 2012, or found any adverse effect Rivera suffered from Scott's failure to provide different treatment recommendations on that date. In addition, Rivera stood and talked with Scott for several minutes, reflecting the capability to heed Scott's advice to file a sick call request if his pain or other reported complaints persisted.[8] For these reasons, I conclude that Scott is entitled to judgment as a matter of law and will grant his motion for summary judgment.

---

December 28, 2012 incident, as well as photographs taken of his injuries after that incident. *See, e.g., Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 155 (4th Cir. 1995) ("Under the spoliation of evidence rule, an adverse inference may be drawn against a party who destroys relevant evidence."). The nonmedical defendants have presented evidence that, after diligent searching, these items could not be located and that because they were not downloaded to a disc for preservation, officials recorded over them and they cannot be recovered.

    As relief in his spoliation motion, Rivera asks for production of the lost items. I cannot order officials to produce what no longer exists. For that reason, I will deny Rivera's motion. Moreover, Rivera presents no evidence that defendant Scott or any of his medical supervisors had any responsibility over the photographs at any time. Therefore, I cannot find that Rivera is entitled to have any adverse inference drawn against Scott on summary judgment, based on the loss of the video footage and photographs. Furthermore, these lost items have no bearing on my determination that defendants Clarke, Hinkle, and Mathena are entitled to summary judgment. In the presentation of his evidence at trial, however, Rivera may argue for an adverse inference against defendants Dickenson and Patrick, based on alleged spoliation of the video and photographic evidence.

    [8] The record also reflects that Rivera could have sought additional medical assessment at any time using a sick call request, and thus, at the most, Nurse Scott's medical decisions delayed for a few hours the medical care that Rivera believed he needed after the alleged assault. Rivera has not presented evidence that this delay resulted in substantial aggravation or complication of his conditions. *See, e.g., Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008) (finding alleged intentional delay of medical care states constitutional claim only if plaintiff shows defendant's conduct

Case 7:14-cv-00573-JPJ-PMS   Document 69   Filed 09/21/15   Page 15 of 17   Pageid#: 1029

IV. Conclusion.

For the reasons stated, I will deny the Motion for Summary Judgment as to Rivera's claims of excessive force by defendants Dickenson and Patrick, but will grant that motion as to all claims against defendants Clarke, Mathena, and Hinkle. I will also grant defendant Scott's Motion for Summary Judgment as to the claim of deliberate indifference to Rivera's serious medical needs after the excessive force incident and will dismiss any related state law claims without prejudice.

For the reasons stated, it is **ORDERED** as follows:

1. The plaintiff's "Motion to Supplement" (ECF No. 68) is GRANTED, and his case is supplemented with the additional documentary evidence submitted with the motion;

2. The plaintiff's "Motion for Spoliation" (ECF No. 67) is DENIED;

3. The defendants' Motion for Summary Judgment (ECF No. 45) is GRANTED IN PART AND DENIED IN PART; the motion is GRANTED as to all claims against defendants Clarke, Mathena, and Hinkle, but is DENIED as to the excessive force claims against defendants Dickenson and Patrick;

---

resulted in substantial harm to him). Moreover, because Rivera chose to file emergency grievances instead of sick call requests as required, he himself delayed his receipt of further medical assessment and treatment of the symptoms he experienced in the days following the alleged assault.

4. Defendant Scott's Motion for Summary Judgment (ECF Nos. 22 and 32) is GRANTED, and any related state law claims are DISMISSED without prejudice, pursuant to 28 U.S.C. § 1367(c);

5. The clerk shall terminate the following defendants as parties to this action: Clarke, Mathena, Hinkle, and Scott; and

6. This case is REFERRED to the Honorable Pamela Meade Sargent, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for further proceedings and preparation of a report setting forth appropriate findings of fact, conclusions of law, and a recommended disposition of the remaining claims.

.

ENTER: September 21, 2015

/s/ James P. Jones
United States District Judge